[Civ. No. 13726. Second Dist., Div. Three. Apr. 20, 1943.]

EMILIE HESLOP, Appellant, v. F. H. KINYOUN et al., Respondents.

[Civ. No. 13727. Second Dist., Div. Three. Apr. 20, 1943.]

FLOYD H. KINYOUN et al., Respondents, v. ROBERT GERHART, Appellant.

J. R. Girling for Appellant in Civ. No. 13726.

James V. Brewer and George L. Greer for Appellant in Civ. No. 13727.

Nourse & Jones for Respondents.

SHINN, Acting P. J.—At about 2 o'clock in the morning two automobiles were driven into a head-on collision in the middle of Beverly Boulevard in the city of Los Angeles. One of them, a Cadillac convertible coupé, traveling east, was driven by Robert Gerhart, who had as a passenger Emilie Heslop. The other, a Packard sedan, was being driven west by Dr. Kinyoun, who was accompanied by his wife. The four occupants of the cars were injured, Miss Heslop and Dr. Kinyoun seriously. Miss Heslop sued Dr. and Mrs. Kinyoun and they, in turn, sued Gerhart for damages. In a consolidated trial of the two actions by the court, the Kinyouns recovered judgment against Gerhart upon a finding that he was solely responsible for the accident, and Miss Heslop was denied a recovery from the Kinyouns as a result of the same finding. From separate judgments Miss Heslop and Gerhart prosecute separate appeals, which are presented upon a single record and will be considered together. The principal contention on both appeals is that the evidence failed to support the finding that Dr. Kinyoun was free from negligence.

The position of the cars with relation to each other and to the street as they came together pretty well demonstrates the manner in which they were being driven immediately before the collision. Beverly Boulevard, at the scene of the accident, is 56 feet wide between curbs. It is divided into four marked traffic lanes. Those adjoining the double middle stripes are 10 feet 6 inches wide, the outer ones 17 feet 6 inches wide. Assuming that the boulevard extends directly east and west, Dr. Kinyoun's car came to rest with its left front wheel on the middle stripes and its left rear wheel some 21 inches to the left or south of the middle stripes. The right rear wheel had made a skid mark 36 feet long and on a line parallel with the middle lines. It necessarily follows from these facts that if the car was in the same position at the time it was struck (and the skid marks show this to have been the case) it was being turned rather sharply to the right at the time of the impact but traveled no appreciable distance in the process of turning, since the right rear wheel was still in

direct line with the skid mark, which showed no deviation from a straight course. The Cadillac driven by Gerhart was entirely on its left or the north side of the middle stripes and was headed southeasterly at an angle approximately 45 degrees. The right front corners of the two cars came together in this position. The left front halves of the two cars were undamaged, although both cars were badly smashed at the point of impact. The right front of the Cadillac was some 3 or 4 feet north of the middle lines, the right rear some 7 or 8 feet farther to the north. These facts appear from photographs in evidence, from which it would further appear that the two cars did not move after they came together.

The obvious explanation of the cause of the accident is that Gerhart immediately before the collision was driving on the wrong side of the street and that he turned suddenly into the Kinyoun car. This is borne out by the physical facts as to the location of the cars and by the testimony of the witnesses, from which the conclusion is inescapable that Gerhart failed to observe or follow a long, gradual turn which Beverly Boulevard takes in that locality. This curve in the highway is best illustrated by the maps and numerous photographs which were in evidence, but we shall endeavor to describe it. The collision occurred some 160 feet east of the intersection of June Street with Beverly Boulevard. The middle of the highway at the point of the collision is 13½ feet south of the middle of the highway at the easterly line of June Street. At a point 62 feet east of the point of collision the middle of the highway, and consequently the markings of the several traffic lanes, are 1½ feet more or 15 feet south of their locations at the east side of June Street. This offset is taken up by a long, easy curve in the street, which commences at the east side of June Street and extends over said distance of 222 feet. It would appear from the maps that the curve is somewhat more pronounced in the westerly half than in the easterly half of this area but at no point does it appear other than a very easy and gradual curve. We may here state the obvious and simple fact that two cars driving, respectively, east and west adjacent to the middle stripes before they reached the curve and each on its own side of the street would be traveling directly east and west and so that each would pass on the left side of the other if both continued in a straight course and did not follow the curve of the street. If they did follow the curve there would be a time when they would be headed directly toward each

other, although of course if they continued to follow the curve of the street each would pass to its right of the other. We mention these facts only because they appear to account for the confusion of Gerhart and his actions, as illustrated by his own testimony and the physical facts which we have described. Although the headlights of both cars were burning, Gerhart and his passenger failed to see the Kinyoun car until, as they testified, they were very close to it; according to Gerhart, only some 30 feet apart. He testified that at about the easterly boundary of June Street he was traveling on the south side of the street some 3 feet from the middle stripes; that after that he did not watch the markings of the middle of the street, and that when he observed the other car directly in front of him he turned suddenly to avoid it. He did not recall in which direction he turned. The logical explanation of his conduct, and the one which the court no doubt accepted, is that he failed to notice the curve in the street and continued straight ahead or turned quickly onto the wrong side of the highway and that when he realized his peril and his position with relation to the other car he suddenly turned sharply to the right to get back onto the right side of the road and turned directly into the Kinyoun car at an angle of approximately 45 degrees. Whether he got onto the wrong side of the street by reason of turning sharply to the left or by following a straight course instead of following the curve cannot be definitely determined from the record, as his own testimony is vague. But the most natural inference would be that he failed to observe the curve of the street, for had he seen it, he no doubt would have followed it. That he was negligent cannot be doubted; indeed, counsel for appellants quite properly do not contend that he was free from negligence.

The question then is whether Dr. Kinyoun was guilty of negligence as a matter of law so as to bar his recovery in his action against Gerhart and to render him liable to appellant Heslop in her action against him. Neither car was traveling at any excessive speed, not over 35 miles an hour, and the element of speed is not relied upon in support of the claims of negligence on the part of the respective drivers. Dr. Kinyoun testified that he was traveling on the north or right-hand side of the street some 3 feet from the middle lines; that he observed the Gerhart car when it was a block or a block and a half away; that as the cars came closer together the Gerhart

car turned into his lane; that he immediately turned to the left, put on his brakes, probably swerved back toward the right, and was slowed down to 12 or 15 miles an hour at the time of the collision. Incidentally, Gerhart testified that he did not put on his brakes before the collision.

It would be difficult to conceive of an automobile accident more inexcusable than this one. Two men of mature years, having a 56-foot highway all to themselves, drive their respective automobiles down the center line of a street with which they are both familiar from having driven it many times, each relying upon the other to stay on his own side of the street and neither thoughtful or cautious enough to provide a margin of safety for himself by giving the other a wider berth. The case was tried upon the theory that this was the conduct of reasonable men and upon evidence that neither during the evening had indulged to an unreasonable extent in the use of intoxicants. The undisputed evidence was that the doctor had partaken of two ounces of wine with coffee, sandwiches, and cake, and that Gerhart over a period of several hours had consumed two highballs, described as consisting of Bourbon whiskey diluted with ginger ale. It is not contended that the respective drivers were negligent in choosing their courses along this crooked street so that they would pass in close proximity at a combined speed of between 60 and 70 miles an hour. There is therefore no occasion for us to compare their conduct with that of a man who hunts for a gas leak with a lighted match or pulls the trigger of a gun to see whether it is loaded. We shall therefore assume, as counsel do, that if each driver had remained on his own half of the highway, no matter how close to the middle, he would not have been guilty of a want of ordinary care.

We return to the arguments of appellants which accuse Dr. Kinyoun of negligence because for some distance before reaching the point of collision his car was partly on the wrong side of the street, in violation of the requirement of section 525 of the Vehicle Code that a car under such circumstances must be driven on the right-hand side of the street. It undoubtedly was a fact that the car for at least 36 feet before it reached the point of the collision was on the wrong side of the street to the extent already noted. It does not necessarily follow from that fact that the trial court was obliged to find that Dr. Kinyoun was negligent. Both he and his wife testified that shortly before the Gerhart car was observed on the wrong side of the street Dr. Kinyoun was driving several

feet north of the middle. There had been a previous trial
of the case and before that Dr. Kinyoun had given his depo-
sition. In his deposition he testified that he was driving at
all times before the collision upon the right side of the street.
At the time of the trial of the present action he testified that
when he apprehended danger from the Gerhart car he made
a turn to the left in order to avoid it. He was examined
and cross-examined at length concerning this change in his
testimony and he made it clear that his statement that he
had turned to the left was not based upon his recollection of
having done so, but upon his recollection of his position in
the street before he apprehended danger and the position his
car was shown to have been in at the time of the collision,
as was clearly illustrated by the photographs. He testified
that he had not seen these until the first trial. Counsel for
defendant Gerhart moved to strike out Dr. Kinyoun's testi-
mony that he had turned to the left to avoid the accident,
upon the ground that it was based upon evidence as to phys-
ical facts and not upon his memory; the motion was denied.
We may as well consider here the contention that the court
erred in this ruling. In one view of the matter the conclusion
of the witness, based upon his deductions, could properly
have been stricken out, but if in this view it was error to
deny the motion, it was harmless error. It would be unreason-
able to believe that the trial judge could have been led astray
in reaching his own conclusions as to·the manner in which
Dr. Kinyoun's car was driven by the argumentative testi-
mony of the witness. The principal fact for the court to
determine was whether Dr. Kinyoun and Mrs. Kinyoun were
telling the truth when they testified that they had been driv-
ing on the right side of the street before they got into a
position of danger. If the trial judge believed them it would
necessarily have followed that Dr. Kinyoun did turn to the
left when he realized his danger. If he had not believed their
testimony he surely would not have been influenced by the
doctor's expression of opinion or conclusion. Witnesses fre-
quently volunteer opinions as to matters which are for the
court to decide. With some witnesses, especially with pro-
fessional men, it is often difficult to prevent this, but a trial
judge who could not reach his own conclusions uninfluenced
by such trivial digressions from the strict rules of evidence
would have to be peculiarly inexperienced or susceptible. But
we do not believe it was error to deny the motion to strike;
the conflicting statements made by the witness bore upon the

question of his credibility—a most important question. It was entirely proper for the court to consider his entire testimony, with his explanations, if any, of the conflicts therein, in order to determine what weight should be given to it. If upon a consideration of his entire testimony the court had believed him to be an untruthful witness, the result would have been favorable to appellants. From an examination of the record it appears to us that the court could not very well have stricken out the mere conclusion stated by the witness without striking out all of the testimony which led up to it and which was in conflict with statements made in the deposition. The witness was entitled to explain or correct his testimony as first given and we can see no prejudice to the case of appellants in the manner in which the court allowed him to do so.

It must be obvious from what we have said that the court would have been fully justified in believing that Dr. Kinyoun's car was momentarily on the wrong side of the street and that it was being turned back onto the right side just as the collision occurred. If this was true, the violation of the letter ·of the law which required it to be driven on the right-hand side would not have been negligence as a matter of law. (*Finney* v. *Wierman,* (1942) 52 Cal.App.2d 282, 286 [126 P.2d 143].) As a matter of fact it might prove the exact opposite of negligence. The trial court's determination that the Kinyoun car was not driven negligently is not unsupported ·by the evidence and we must accept it as conclusive.

While we have discussed only the claim of negligence arising from the fact that the car was for a time on the wrong side of the road, we have noticed that there are some other theories of possible negligence suggested in the briefs, but are of the opinion that they do not merit particular attention.

There is another feature of the case which we deem important, although it has not received the attention of counsel. The court found in the Kinyoun case that the accident was caused solely and proximately by the negligence of Gerhart and that no negligent act or omission of Dr. Kinyoun caused or contributed thereto. In the Heslop case it was found that the accident was not caused by any negligent act or omission of Dr. Kinyoun but that the negligence of Gerhart was the sole and proximate cause of the accident. These findings, in our opinion, are broad enough to cover the issue of proximate cause as well as the issue of Dr. Kinyoun's negligence. They

mean that the manner in which Dr. Kinyoun's car was driven did not cause or contribute to the happening of the accident. We should construe the findings broadly in support of the judgment and if we do construe them as being favorable to Dr. Kinyoun on the issue of proximate cause, we find that they are clearly supported by the evidence. Let us suppose for the sake of argument that Dr. Kinyoun's car was being driven so that it extended 2 feet onto the south half of the road and that Dr. Kinyoun was thereby guilty of violation of section 525 of the Vehicle Code and of negligence. Still, upon the facts which were clearly established such negligence would not appear to have been a cause of the accident, proximate or otherwise. The collision did not occur because Dr. Kinyoun was on the wrong side of the street but because Gerhart was on the wrong side. It would have been very different if Gerhart's car had been struck on its own side of the street. Gerhart did not see the Kinyoun car until he was within about 30 feet of it, and obviously then he was on the wrong side of the street because he had failed to follow the curve. The collision would have occurred just the same if Dr. Kinyoun's car had been 2 or more feet to the north; in fact, Dr. Kinyoun's car would then have been somewhat more directly ahead of the Gerhart car. If the trial judge believed, as we think he surely did, that when the Gerhart car was turned directly toward Dr. Kinyoun's car the latter had no chance to escape a collision, Gerhart's negligence would have to be found to be the sole cause of the accident, and if the court had believed that the accident would have happened even though Dr. Kinyoun had been driving entirely on the north side of the street, his failure to so drive under the circumstances could not have been held to be a proximate cause of the accident. The court then very properly found that Gerhart's negligence was the sole proximate cause of the accident and that no act or omission of Dr. Kinyoun caused or contributed thereto. But the finding that Dr. Kinyoun was not negligent was well justified by the evidence. What we have said on the issue of proximate cause furnishes an additional reason why the judgment must be affirmed.

The judgments are affirmed.

Wood (Parker), J., and Shaw, J. pro tem., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 17, 1943.